IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FRANK WALTRIP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:16-cv-00355-NJR |
| | ) |
| JACQUELINE LASHBROOK, | ) |
| DIRECTOR OF IDOC, | ) |
| CANTINA FOOD SERVICES, | ) |
| MARCUS HARDY, | ) |
| VIPAN SHAH, and | ) |
| UNKNOWN PARTY, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Frank Waltrip is currently incarcerated at the Pinckneyville Correctional Center ("Pinckneyville"). (Doc. 1 at 1.) Proceeding *pro se*, Waltrip has filed a civil rights action under 42 U.S.C. § 1983 against prison employees and officials and the food company that provides soy food for Pinckneyville inmates. (*Id.* at 1-2.) Waltrip alleges that the defendants served him a soy diet and failed to address health issues that he experienced due to the diet. (*Id.* at 5-6.) He seeks monetary damages. (*Id.* at 7.)

This matter is now before the Court for a review of the complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During the § 1915A review, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is frivolous, malicious, or fails to

state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune."

## Background

Waltrip has been fed a soy-based diet while incarcerated at Pinckneyville. This diet has caused him to experience stomach pains, severe constipation, extreme gas, a torn anus, fatigue, headaches, severe depression, and other injuries. (Doc. 1 at 6.) He claims that the defendants have conspired to serve the Pinckneyville male prisoners a soy-based diet or else impel them to spend large amounts of money on commissary, with the consequence that Defendant Unknown "commissary owners' make $4,750,000 annually in commissary profits. (*Id.* at 5.) Further, he alleges that "Bailey, Shah, Lashbrook, Hardy, and Director [of the Illinois Department of Corrections ("IDOC")] instituted a policy to "never treat any soy-related medical problems" and to "never create a medical paper trail." (*Id.*) According to the complaint, female inmates successfully sued IDOC over their soy diet, and they are no longer served soy-based meals as a result. (*Id.*)

Waltrip, along with a fellow inmate named "Owens," filed several grievances. (*Id.*) Each grievance was allegedly destroyed (many by a grievance officer named "Platt") and met with no response. (*Id.*) A counselor even told Waltrip to kill himself. (*Id.*) Waltrip spoke to Defendant Warden Lashbrook, as well as Spiller, but both officials told him to stop listening "to that cripple ass Owens, and cut this soy business out." (*Id.* at 6.) Spiller additionally told Waltrip to "man-up or just eat/buy more commissary." *(Id.)*

Waltrip met with Defendant Dr. Shah on multiple occasions about his soy-related medical problems. (*Id.* at 5-6.) Shah told Waltrip that his soy-based diet was not the cause of his problems and that he should simply drink more water or purchase more commissary. (*Id.* at 5.)

When Waltrip told the physician that he required a thyroid hormone level check, a soy-free diet, and medical care for his injuries, Shah simply told him to drink more water. (*Id.* at 6.)

Waltrip claims that he suffers severe stomach pains, constipation, gas, a torn anus, fatigue, headaches, depression, and other injuries. (*Id.*) He claims that he has become embroiled in several violent altercations with his cellmates due to his gas. (*Id.*)

### Discussion

To facilitate the management of future proceedings, and in accordance with the objectives of Federal Rules of Civil Procedure 8 and 10, the Court finds it appropriate to organize the claims in Waltrip's *pro se* complaint into counts, as shown below. The parties and the Court will use these designations in all pleadings and orders, unless otherwise directed by the Court. The designation of these counts does not constitute an opinion as to their merit.

> **COUNT 1:** Lashbrook, Director of IDOC, Cantina Food Sources ("Cantina"), Deputy Director Hardy, Unknown Party (commissary owners), and Shah violated Waltrip's constitutional rights by serving him soy meals.
>
> **COUNT 2:** Shah was deliberately indifferent to Waltrip's serious medical condition.
>
> **COUNT 3:** All Defendants conspired against Waltrip by serving soy food at the prison.

### Discussion

As a preliminary matter, Waltrip discusses several people in the body of the complaint that are not listed as defendants in the caption of the complaint—specifically, Bailey, Platt, an unidentified counselor, and Spiller. Because these parties are not listed in the caption, they will not be treated as defendants in this case, and any claims against them should be considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint

"must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption").

The Constitution mandates that prison officials provide inmates with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985). Construing Waltrip's complaint broadly, he alleges that Pinckneyville had a policy of serving soy-based food to prisoners, that this food has caused a number of side effects, and that high-level officials were aware of these side effects from a previous suit, and yet continued to serve soy food anyway. These allegations are sufficient to state arguable claims concerning the service of nutritionally inadequate or dangerous food against Lashbrook, the Director, Hardy, and Unknown Party (commissary owners). This is true especially in light of the fact that the food service aspect of the claim concerns systematic conditions at Pinckneyville, and the prison-related defendants appear to be senior level staff within IDOC. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1428-29 (7th Cir. 1996) (personal involvement can be assumed at early stage for high-level officials if the conditions alleged are "potentially systematic"). Accordingly, **Count 1** may proceed as to Lashbrook, the Director, Hardy, and Unknown Party (commissary owners).

**Count 1** must be dismissed, however, as to Cantina and Shah. Cantina is a corporate entity and is therefore treated as a municipality for purposes of § 1983 liability. *See Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002). "[T]o maintain a § 1983 claim against a municipality, [a plaintiff] must establish the requisite culpability (a 'policy or custom' attributable to municipal policymakers) and the requisite causation (the policy or custom was the 'moving force' behind the constitutional deprivation)." *Gable v. City of Chicago*, 296 F.3d 531,

537 (7th Cir. 2002). Here, Waltrip has not alleged any concrete policy or custom attributable to Cantina, and he has not claimed that any acts by Cantina led to the alleged deprivation of his rights. As to Shah, Waltrip has not alleged that he had any involvement in general food service at Pinckneyville, and he is not the type of prison official where his involvement in food service can be presumed at the outset of a suit. Accordingly, **Count 1** must be dismissed without prejudice as to Cantina and Shah.

As to **Count 2**, Waltrip may pursue his claim against Dr. Shah. Waltrip claims that Shah refused his request for a thyroid hormone level check, soy-free diet, and treatment despite his numerous health problems. To state a medical claim under the Eighth Amendment, a plaintiff must show that his condition "was objectively serious," and that officials acted with the requisite intent towards that condition. *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). For screening purposes, Waltrip's claim passes the objective hurdle—he alleges that he has suffered stomach pains, constipation, a torn anus, extreme gas, headaches, and other injuries linked to the food at the prison, and those symptoms can indicate an arguably serious condition at screening. *See Gutierrez v. Peters*, 111 F.3d 1364, 1372 n.7 & 1373 (7th Cir. 1997). Waltrip's claim also passes the subjective hurdle—allegations of a failure to treat can constitute indifference, depending on the circumstances. *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011); *McGowan v. Hulick*, 612 F.3d 636, 640-41 (7th Cir. 2010). As such, **Count 2** may proceed through screening as to Dr. Shah.

Waltrip also seems to bring standalone conspiracy allegations concerning the soy-based diet at the prison and the policy to not serve breakfast (**Count 3**). To the extent these allegations are raised against the defendants who already have claims against them in **Counts 1** and **2**, the conspiracy claim is duplicative, and **Count 3** must be dismissed without prejudice against them.

*Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988) (noting that the "function of conspiracy doctrine" in § 1983 cases "is merely to yoke particular individuals to the specific torts alleged in the complaint"). To the extent **Count 3** is raised against any defendants dismissed from **Count 1** in an effort to draw them into the lawsuit, this is problematic under Federal Rule of Civil Procedure 8, which requires litigants to provide a minimum level of "factual content" to state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Especially for allegations of a "vast, encompassing" conspiracy—like the one Waltrip seems to be alleging here—a plaintiff "must meet a high standard of plausibility" to state a claim under Rule 8. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009). In this case, all Waltrip puts forth is a conclusory allegation that the defendants conspired with one another. Without more developed allegations, he has not made out a viable conspiracy claim, and **Count 3** must be dismissed.

Over and above his Eighth Amendment claims, Waltrip also invokes the Fourteenth Amendment in his complaint. He fails to articulate any distinct Fourteenth Amendment issue, however, and the Court cannot discern one from the narrative of his complaint. Any Fourteenth Amendment claim would appear to be redundant, as it is necessarily based on the same facts underlying the Eighth Amendment claims that were already recognized above. *See*, *e.g.*, *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (dismissing equal protection and Eighth Amendment claims based on same circumstances as religious claim because religious claim "gains nothing by attracting additional constitutional labels"); *Williams v. Snyder*, 150 F. App'x 549, 552–53 (7th Cir. 2005) (dismissing equal protection, access to courts, due process, and Eighth Amendment claims as duplicative of retaliation and religion claims). As such, any Fourteenth Amendment claims should be considered dismissed without prejudice.

**Pending Motions**

The same day he filed his complaint, Waltrip filed a motion for recruitment of counsel (Doc. 3) and a motion for service of process at government expense (Doc. 4). The Court will first discuss Waltrip's motion for counsel. There is no constitutional or statutory right to appointment of counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). However, federal district courts have discretion under 28 U.S.C. § 1915(e)(1) to request counsel to assist pro se litigants. *Id.* When presented with a request to appoint counsel, the Court must make the following two inquiries: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

Concerning the second step of the inquiry, "the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand." *Id.* at 655. From a legal standpoint, the litigation of any constitutional claim falls in the complex range. Even so, Waltrip's petition sufficiently articulates his claims, and based on this ability, this Court concludes that he appears to be competent to litigate his case on his own at this time. Future developments in this case may alter the Court's decision, but at this early stage in the litigation, Waltrip's motion for appointment of counsel will be **DENIED** without prejudice to refiling it at a later stage in the litigation.

Waltrip's motion for service of process at government expense is **GRANTED**. Waivers of service of summons will be issued and served on Defendants as ordered below. Waltrip is advised that it is not necessary for a litigant proceeding *in forma pauperis* to file a motion requesting service of process by the United States Marshal Service or other process server. The

Clerk will issue summons and the Court will direct service for any complaint that passes preliminary review.

### Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, **COUNT 1** shall **PROCEED** against the **DIRECTOR**, **HARDY**, **UNKNOWN PARTY (commissary owners)**, and **LASHBROOK**. **COUNT 1** is **DISMISSED without prejudice** as to **SHAH** and **CANTINA**.

**IT IS FURTHER ORDERED** that **COUNT 2** may **PROCEED** against **SHAH**.

**IT IS FURTHER ORDERED** that **COUNT 3** is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **SHAH**, **DIRECTOR**, **HARDY**, and **LASHBROOK**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on Defendant **UNKNOWN PARTY** until such time as Plaintiff has identified these defendants in the complaint by filing a motion to substitute Defendant **UNKNOWN PARTY** with the names of these individuals in the caption and, where applicable, throughout the complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to a Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under § 1915 for leave to commence this action without being required to prepay fees and costs, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**DATED:  April 22, 2016**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**